**In re Robert L. DAWSON and Deborah L. Dawson, Debtors.**

**Bankruptcy No. 94–40608.**

United States Bankruptcy Court,
E.D. Texas,
Sherman Division.

Dec. 16, 1994.

Robert E. Barron, Nederland, TX, for debtors.

Linda Payne, Chapter 7 Trustee, Paris, TX.

**ORDER APPROVING IN PART AND DENYING IN PART APPLICATION FOR FINAL PAYMENT OF ATTORNEY'S FEES AND EXPENSES**

C. HOUSTON ABEL, Chief Judge.

■ Before the Court is an Application For Final Payment Of Attorney's Fees And Expenses ("Application") filed by Robert R. Barron, P.C. ("Applicant") on September 6, 1994. The Applicant seeks approval to apply a $2,490.00 prepetition retainer to approved fees and expenses. The United States Trustee objected to the Application asserting that the retainer is unreasonable in relation to the complexity of the case and that services were rendered which did not benefit the estate. After reviewing the Application, objection, and considering the factors set forth in *In re First Colonial Corp. of Am.*, 544 F.2d 1291 (5th Cir.1977), *cert. denied*, 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977), the Court is of the opinion that the Application should be APPROVED IN PART and DENIED IN PART.[1]

1. The Court has broad discretion when determining the reasonableness of a fee application. *In re*

## DISCUSSION

■ A debtor's attorney may only be paid from the estate if the services and expenses were actual and necessary to the preservation of the estate. 11 U.S.C. § 330(a). Unlike other chapters of the Bankruptcy Code, the role of a debtor's attorney in terms of providing services that benefit the estate is very limited because of the appointment of a trustee to administer the estate. Only the services that assist a debtor in performing the debtor's legal duties as opposed to exercising his legal privileges are compensable from the estate. *In re Office Products of Am., Inc.*, 136 B.R. 964, 974 (Bankr.W.D.Tex.1992). Essentially, the services of a Chapter 7 debtor's attorney that benefit the estate are limited to "analyzing the debtor's financial condition, rendering advice and assistance to the debtor in determining whether to file a petition in bankruptcy, the actual preparation and filing of the petition and the required schedules and statements, and representing the debtor at the § 341 meeting of creditors." *In re Saunders*, 124 B.R. 234, 238–39 (Bankr.W.D.Tex. 1991); *Stewart v. Law Offices of Dennis Olson*, 93 B.R. 91, 95 (N.D.Tex.1988), *aff'd*, 878 F.2d 1432 (5th Cir.1989). Any services rendered by a debtor's attorney in a Chapter 7 case that were above and beyond those associated with the legal duties of the debtor "are not 'necessary' to the administration of the estate within the meaning of the statute and should therefore not be compensable." *Office Products of Am., Inc.*, 136 B.R. at 974. Services rendered in defending actions relating to a debtor's discharge are not for the benefit of the estate. *In re Jones*, 665 F.2d 60 (5th Cir.1982); *In re Leff*, 88 B.R. 105, 109 (Bankr.N.D.Tex.1988).

## FIRST COLONIAL FACTORS

### A. *Time and Labor Required*

According to the amended billing statement, the case required a total of 8.65 hours of paralegal time and a total of 17 hours of attorney time. Not only was the time highly unreasonable in relation to the complexity of

*Anderson*, 936 F.2d 199, 204 (5th Cir.1991).

the case, but much of the purported services rendered were of no benefit to the estate and thus not compensable. Although the Court is unable to dispute that the Applicant worked the hours stated in the Application, the Court is of the opinion that the time to undertake certain tasks was greater than what was required.

The Bankruptcy Code provides that professionals may seek compensation for their *actual* time and expenses that benefit the estate, not average time and expenses. *See* 11 U.S.C. § 330(a). The Applicant admitted that no contemporaneous time or expense records were maintained. Instead, the Applicant created the billing statement after the fact based on records by "plugging in" the average amount of time it takes to perform the particular task. Further, the Applicant used a "plug" of $72.50 as incurred expenses based on the Applicant's estimation of average expenses in a case.[2] Thus, the time and expenses listed may actually be less or greater than reality.

 It is difficult for the Court to place much weight on time records created several months after the services were rendered. The Court finds it inappropriate for the Applicant to merely "plug in" the average time and expense when in fact the time and expense may not be accurate. The failure of the Applicant to maintain contemporaneous time and expense records affects the reliability of the records. *See generally, Grant v. George Schumann Tire & Battery Co.,* 908 F.2d 874, 878 n. 10 (11th Cir.1990) ("court has discretion to determine the credibility of hours claimed in the absence of contemporaneous records"); *In re Cascade Oil Co., Inc.,* 126 B.R. 99, 104 (D.Kan.1991) (reiterated Tenth Circuit mandate that attorney's fees be based on contemporaneous records); *In re S.T.N. Enterprises, Inc.,* 70 B.R. 823, 834 (Bankr.D.Vt.1987) (court only accepted contemporaneous time records of professional fees). Not all cases are the same. Accordingly, the Court will closely scrutinize all of the Applicant's billing entries. Also, the Court will deny all alleged expenses because

of the Applicant's failure to establish whether the expenses were actually incurred. Even if the expenses were actually incurred, the Court is unable to determine whether the expense relates to services assisting the Debtors in performing their legal duties or exercising their legal privileges.

Additionally, the Applicant failed to adequately describe many of the services rendered. It is the burden of the Applicant to provide the Court with "sufficient detail for the court to determine what work was done, how long it took to do, whether there has been any duplication of effort, and what results were achieved." *Office Products of Am., Inc.,* 136 B.R. at 976 (citing *In re Temple Retirement Community, Inc.,* 97 B.R. 333, 338 (Bankr.W.D.Tex.1989)). The Applicant need not disclose information that violates attorney-client privilege. However, general descriptions such as "Letter from Client", "Call from Client", or "Call from Creditor" are insufficient. *See Office Products of Am., Inc.,* 136 B.R. at 976 ("phone calls are not compensable unless the purpose of the conversation, the length of the conversation, and names of the persons involved in the conversation are set out"); *Cascade Oil Co., Inc.,* 126 B.R. at 105. This Court is not required to "venture guesses nor undertake extensive investigation to justify a fee for an attorney . . . who has not done so himself." *In re Evangeline Refining Co.,* 890 F.2d 1312, 1326 (5th Cir.1989). In summary, the Applicant failed to justify all the time and labor expended on this case. *See Evangeline Refining Co.,* 890 at 1326 (applicant bears burden of proof in a fee application).

 Specifically, the Court finds that either an unreasonable amount of time was allotted to perform the following tasks and/or the Applicant failed to establish how the estate was benefitted:

| DATE | TASKS | TIME |
|------|-------|------|
| 11–16–93 | Preparation of Retainer Agreement & Letter to Client | .8 atty. time |

The retainer agreement is a form which is used in most of the Applicant's bankruptcy

---

2.

| | | |
|---|---|---|
| Postage | | $10.00 |
| Copying (150 * .25) | | 37.50 |
| Telephone | | 25.00 |
| | | $72.00 |

cases. Filling in the appropriate blanks is a fairly simple process that could be completed in a few minutes. Further, the Applicant's failure to adequately describe the letter he wrote to the Debtors on November 16th prevents the Court from determining its benefit to the estate. Because the Applicant failed to provide the Court sufficient information, the Court surmises that it was a short and simple cover letter mailed to the Debtors along with the retainer agreement. Since the Applicant's practice is centered around the use of forms, it is likely that the letter was similar to the letters mailed to other clients of the Applicant. Finally, all or part of this task could easily have been handled by a paralegal and thus should not be compensable at the top hourly rate. *See S.T.N. Enterprises, Inc.*, 70 B.R. at 842 (there is "an obligation to delegate those tasks that require less expertise to junior associates or paralegals").

| DATE | TASKS | TIME |
|---|---|---|
| 4–15–94 | Preparation of Schedules, Bankruptcy Rights and Duties | 2.0 atty. time 2.6 para. time |

The Court is of the opinion that it should not have taken a total of 4.6 hours (attorney and paralegal time) to prepare the Debtors' schedules and a statement of the Debtors' rights and duties. The Debtors have less than thirty creditors and relatively few assets. The schedules were computer generated and the Debtors answered "None" to a majority of the questions. Much, if not all, of the required information was probably obtained from prior meetings with the Debtors. The Applicant is very familiar with the information required to be disclosed in the schedules and preparing the Debtors' schedules should have been relatively simple based on the Applicant's experiences. Finally, the statement of rights and duties of a debtor is most likely a form given to nearly all of the debtors the Applicant represents and probably took just a few minutes to prepare.

| DATE | TASKS | TIME |
|---|---|---|
| 4–25–94 | Letter to Client re: Filing | .5 atty. time |

The Court notes this is a common entry in the Applicant's fee applications. Accordingly, the Court surmises that this was a form letter mailed to all of the Applicant's clients.

Not only did the Applicant fail to justify why it took 30 minutes to prepare this letter, it appears that this was a task that could have been handled by a paralegal.

| DATE | TASKS | TIME |
|---|---|---|
| 6–6–94 | Review Reaffirmation Agreement Foley's | .5 atty. time |
| 6–7–94 | Review Reaffirmation Agreement Bank One | .5 atty. time (est.) |
| 6–20–94 | Review Reaffirmation Agreement Sears | .5 atty. time |

The Court is of the opinion that it should not have taken 1.5 hours by an experienced attorney to review three reaffirmation agreements. Reaffirmation agreements are simple and not complicated. Also, the Applicant testified that he would never recommend that a client reaffirm a debt, thus the Court is uncertain what there was to "review". True to form, no reaffirmation agreements were filed in the case. The Court finds this "plug" number to be highly unreasonable.

| DATE | TASKS | TIME |
|---|---|---|
| 8–3–94 | Review of Trustee Motion & Preparation of Request for Hearing | .5 atty. time |
| 9–2–94 | Preparation of Fee Application—Prepare for Hearing | 2.0 atty. time |
| 9–21–94 | Letter to John Anderson re: Fee App. | .5 atty. time |
| 11–14–94 | Preparation for Fee App. Hearing, Telephone Conference with John Anderson and Review of U.S. Trustee Response | 2.0 atty. time |
| 11–15–94 | Attendance at Fee App. Hearing | 1.0 atty. time |

Approximately ⅛ of the attorney time (6 hours) has been devoted to justifying the Applicant's retainer. However, the Applicant caused this additional expense by requiring such a large retainer from the Debtors for this rather simple, uncomplicated, no asset, consumer case. But for the Applicant's attempt to use property of the estate to fund services not compensable from the estate, this additional expense would not

have been incurred.[3] Further, the Court finds that the Applicant has either exaggerated the time alleged to been spent associated with the fee issue or the time is unreasonable. For example, the trustee's motion requesting that a fee application be filed was rather short and straightforward. The response filed to the trustee's motion was one page and was nearly identical to the form response that the Applicant uses to respond to all motions filed. Thus, the Court finds the .5 "plug" to be unreasonable. The Application is almost identical to all other fee applications the Applicant has filed. It is evident that the Applicant merely adapted his form fee application by making the relatively few required changes. The Court is of the opinion that because of the brevity of the itemization, if the Applicant had maintained contemporaneous time records, the Application could have been prepared in less than one hour. Also, the Court is of the opinion that the preparation of the Application was a task that should have been delegated to the Applicant's paralegals. Compiling time records and adapting a form fee application are ministerial tasks that should not be compensable at the top hourly rate. See S.T.N. Enterprises, Inc., 70 B.R. at 842 (there is "an obligation to delegate those tasks that require less expertise to junior associates or paralegals").

■ Further, the Court finds that the Applicant impermissibly billed the estate for service which are classified as overhead and thus not compensable. "Opening file" (11–16–93) and "Conference with Client to sign papers, copied & filing with Court" (4–22–94) are clerical tasks and part of overhead. See S.T.N. Enterprises, Inc., 70 B.R. at 838. Finally, other than the time spent regarding the reaffirmation agreements and the fee application, the Court finds that all services rendered after June 6, 1994, to be personal to the Debtors and thus not compensable. The Applicant failed to prove that these services benefitted the estate.

**3.** A prepetition retainer is property of the estate. Office Products of Am., Inc., 136 B.R. at 970;

### B. Novelty and Difficulty of Questions

This case involved neither novel nor difficult questions.

### C. Skill Necessary to Perform the Services

The skills required to perform the legal services in this case are the skills normally expected of the average competent practitioner in this field. The Court is the opinion that this case required no special skills or expertise above the ordinary level of skill and competence normally seen in this Court.

### D. Preclusion of Other Employment Due to Acceptance of the Case

The Applicant asserts that this case precluded the Applicant from representing creditors due to potential conflict problems. However, any potential conflict problem did not necessarily arise because of the Applicant's representation of these Debtors, but by the decision of the Applicant to specialize in representing debtors. The focusing of the Applicant's practice on primarily representing Chapters 7 and 13 debtors has resulted in the Applicant representing more debtors in the Eastern District of Texas than any other attorney or firm. Thus, it is the Applicant's overall practice and not just the representation of these Debtors which precludes the Applicant from representing creditors. Accordingly, the Court is primarily concerned with whether the representation of the Debtors has precluded the Applicant from representing other debtors.

After focusing on the type of clients that the Applicant has voluntarily chosen to represent; i.e. debtors, no evidence was presented that the acceptance of this case precluded the Applicant from representing other debtors. The Court notes, however, that all new cases curtail an attorney's availability to handle other cases to a degree. Because there is limited amount of time available in a day, the time spent on one case will automatically limit a practitioner's ability to address other cases. Thus, the curtailment of the Appli-

Leff, 88 B.R. at 107.

cant's availability for employment on other matters is a truism with all cases.

### E. *Customary Fee*

■ The Court finds the hourly rate charged by the Applicant ($175.00) exceeds the rate typically charged for similarly experienced attorneys in the Eastern District of Texas. The hourly rate for most debtor's attorneys is under $165.00. However, the Court finds the hourly rate is reasonable based on the Applicant's experience.[4]

### F. *Whether the Fees is Fixed or Contingent*

The fees were fixed.

### G. *Time Limitations Imposed by the Court or Other Circumstances*

According to the Application, no time limitations were imposed by either the Court or the Applicant's client.

### H. *The Amount Involved and the Results Obtained*

■ The filing of the Debtors' bankruptcy resulted in the discharge of a significant amount of debt. However, most of the services rendered by the Applicant were personal to the Debtors and thus not compensable. The Court is of the opinion that the results that benefitted the estate could have been obtained at a cost much lower than that charged by the Applicant. This case was a rather simple, no asset, consumer Chapter 7 bankruptcy case. The Applicant's retainer is excessive in relation to the complexity of the case and the results obtained. The Court surmises the Applicant required a relatively large retainer for this case in order to have security for all services to be rendered and expenses to be incurred, regardless of wheth-

er the estate is benefitted. However, for the services and expenses that benefitted the Debtors personally, the Applicant must look to the Debtors' exempt property and postpetition earnings. *Leff,* 88 B.R. at 109. Accordingly, the Applicant's retainer exceeds the services that benefitted the estate.

### I. *Experience, Reputation and Ability of the Professionals*

The Court finds that the Applicant is competent and experienced in bankruptcy law and has handled numerous bankruptcy matters before the Court.

### J. *Undesirability of the Case*

The Court is of the opinion that this case was not undesirable.

### K. *Nature and Length of the Professional Relationship with the Client*

The Applicant's relationship with the Debtors started shortly before the filing of the case, November 16, 1993.

### L. *Awards in Similar Cases*

■ The Court notes that the total customary fees and expenses for a ordinary, no asset, consumer Chapter 7 bankruptcy case in this district rarely exceeds $1,500.00. Attorney's fees and expenses in comparable Chapter 7 cases range from $500.00 to $1,000.00.[5] The Applicant seeks compensation in the amount of $2,490.00. The Court notes that attorney's fees in most Chapter 13 cases that involve preparing plans of reorganization are less than the total amount requested by the Applicant. The Applicant's attempt to impermissibly charge the estate for services personal to the Debtors and the use of average time and expenses has re-

---

**4.** The Court assumes that Robert Barron was the only attorney to work on this case because he is the only attorney referred to in the Application. However, the Court is aware that the Applicant employs an associate—Allen Gregory. The Applicant has never demonstrated to the Court that the associate's qualifications warrant a hourly rate as high as Robert Barron. To the extent that services were performed by the associate, the Applicant is under a duty to so designate. Failure of the Applicant to properly disclose the services rendered by the associate is subject to

having the Application denied *in toto* and/or sanctions being imposed for misleading the Court.

**5.** In the Eastern District of Kentucky, a district somewhat similar to this district, the average attorney's fees and expenses for an "ordinary run-of-the mill" consumer bankruptcy case is $750.00. *See In re Costello,* 150 B.R. 675, 680 (Bankr.E.D.Ky.1992).

quired the Court to be meticulous in its review of the Application. After the adjustments made herein, the Court finds the approved fees to be commensurate with cases of comparable size and complexity.

## CONCLUSION

A bankruptcy court has the authority to require a debtor's attorney to turnover the portion of the prepetition retainer that is unreasonable or excessive. *See In re Lee,* 884 F.2d 897, 899 (5th Cir.1989) (bankruptcy court can "order the return of any unreasonable or excessive portion of an attorney's fee paid before commencement of a bankruptcy case for services rendered or to be rendered"); *Office Products of Am., Inc.,* 136 B.R. at 969–71; *Leff,* 88 B.R. at 106. After fully considering all the *First Colonial* factors, the Court finds that the Applicant's prepetition retainer was excessive and unreasonable. The Applicant's legal services that benefitted the estate should not have exceeded $1,000.00. THEREFORE,

IT IS ORDERED that the Applicant is allowed reasonable and necessary fees in the total amount of **$1,000.00;** FURTHER,

IT IS ORDERED that the Applicant disgorge the excess $1,490.00 to the Chapter 7 trustee **within ten (10) days** from the entry of this order; FURTHER,

IT IS ORDERED that if the Applicant has not timely disgorged the excess $1,490.00, the Applicant shall be sanctioned in the amount of **$100.00 per day** until the Applicant has fully complied with this order.

IT IS SO ORDERED, ADJUDGED AND DECREED.